PADDOCK-HAWLEY IRON COMPANY, Appellant, v. RICE et al.

### Division One, February 10, 1904.

1. **Contribution**: ATTACHING CREDITORS: JOINT TRESPASSERS. Each of six creditors acted for itself in attachment suits. None of the six knew when it sued out its writ that any of the others had done so, but they all knew that a seventh company had done so. All except one of them were represented by different counsel from the plaintiff, and their suits were begun two days before plaintiff's, and while the plaintiff had a draft from the defendant for what he owed plaintiff. Another suit was begun by another creditor two days later than was plaintiff's, and its attorney was the same as plaintiff's but he did not tell that creditor about plaintiff's suit nor that he represented plaintiff. The writs in all the suits were served on the same day, but in his return the sheriff made plaintiff's to appear to have been served first, as he was told to do by plaintiff's counsel. At the trial of the one case the attaching creditor was assisted by an attorney who had been employed by all of them. *Held*, that the other six creditors can not be compelled to contribute towards the payment of the damages for the unsuccessful attachments, on the theory that they were joint trespassers with plaintiff in bringing the attachments.

2. ———: ———: RATIFICATION. On an appeal from a judgment in favor of one of the attaching creditors it was held that there was no sufficient evidence on which to base an attachment, and thereupon, the evidence being the same to sustain the others, the attorneys for all the parties entered into a stipulation agreeing that judgments might be entered in each case in favor of the interpleader for the amount of money in the sheriff's hands resulting from the sale of the attached property. *Held*, in a suit by one of the attaching creditors against the

others, to compel them to contribute towards the payment of
of a subsequent judgment for damages which plaintiff paid, that
the other attaching creditors by joining in the stipulation had
not so affirmed or ratified plaintiff's trespass as to justify a
decree compelling contribution from them.

3. ——————: TRESPASS: JOINT TORTFEASORS: ONE SATISFACTION. A de-
termination of whether or not the injured party is entitled to
only one satisfaction for a trespass, or whether or not the tres-
pass is single, does not determine the right to compel contribu-
tion. In order that there may be contribution between tort-
feasors, they must have acted jointly or by concert of action.

Appeal from St. Louis City Circuit Court.—*Hon. W. B.
Douglas,* Judge.

AFFIRMED.

*W. B. Homer* for appellant.

(1) The general rule that neither contribution nor
indemnity will be given to one of several tortfeasors
against the others is only applied in cases of intentional
and conscious wrongdoing; if the tortious act was com-
mitted without guilty intent, or if the plaintiff without
personal fault has been exposed to liability, because of
his responsibility for the acts of the actual wrongdoer,
he can recover contribution from those who participated
in or shared the responsibility. Merryweather v. Nixan,
8 Dun. and East 186; Palmer v. Wick, 1 App. Cas. L. R.
318; Bailey v. Bussing, 28 Conn. 458; Horback v. El-
der, 18 Pa. St. 35; Armstrong v. Clarion, 66 Pa. St. 218;
Nickerson v. Wheeler, 118 Mass. 295; Torpy v. Johnson,
43 Neb. 882; Colmer v. Wilson, 13 Utah 129; Thweatt v.
Jones, 1 Rand. 328; Coventry v. Barton, 17 Johns. 142;
Adamson v. Jarvis, 4 Bing. 66; Goldsborough v. Darst,
9 Ill. App. 205; Sims v. Singleton, 2 McMullan 184;
Ankeny v. Moffett, 37 Minn. 109; Moore v. Appleton,
26 Ala. 633; Jacobs v. Pollard, 10 Cush. (Mass.) 287;
Campbell v. Messier, 4 John. Ch. 338; Dearing v. Earl

of Winchester, 1 Cox Cas. 318; Van Petten v. Richardson, 68 Mo. 379; Nichols v. Nowling, 82 Ind. 488.   (2) The foregoing doctrine is applied in attachment and like actions.   Vandiver v. Pollak, 107 Ala. 547; s. c., 54 Am. St. R. 118; Vandiver v. Pollak, 97 Ala. 467, s. c., 19 L. R. A. 628; Farwell v. Becker, 129 Ill. 272; Acheson v. Miller, 2 Ohio St. 205; Selz v. Guthman, 62 Ill. App. 635; Frankenthal v. Lingo, 16 Tex. Civ. App. 229; s. c., 40 S. W. 815; Ellis v. Howard, 17 Vt. 380; Stone v. Dickinson, 5 Allen (Mass.) 29.   (3)   The attaching creditors, both plaintiff and defendants, were free from any intentional or conscious wrongdoing in bringing the attachment suits   or making the levies.   Vandiver v. Pollak, 107 Ala. 547; Peters-Miller Shoe Co. v. Smith, 53 Mo. App. 640. (4)   Plaintiffs in the various attachment suits authorized the bringing of the same and the attorneys had authority to take all the steps that were taken in the said suits.   Valle v. Picton, 16 Mo. App. 181; s. c., 91 Mo. 215; O'Brien v. Yare, 88 Mo. App. 493; 1 Thompson on Trials, sec. 191; Cochran v. Thomas, 131 Mo. 258; State v. Downs, 164 Mo. 475; 3 Am. and Eng. Ency. Law (2 Ed.), pp. 349, 350; Scarritt Fur. Co. v. Moser, 48 Mo. App. 548; Davis v. Hall, 90 Mo. 659; Railroad v. Stevens, 36 Mo. 150; Muir v. Orear, 87 Mo. App. 41; State ex rel. v. Chaney, 36 Mo. App. 513; Vaughn v. Fisher, 32 Mo. App. 35; Clark v. Randall, 9 Wis. 135. (5)   The levies were both joint and simultaneous, and the act of the sheriff in making such levies was authorized and ratified by the respective attaching plaintiffs. Vandiver v. Pollak, 107 Ala. 550; Stone v. Dickinson, 5 Allen (Mass.) 29; Ellis v. Howard, 17 Vt. 380; Brewster v. Gauss, 37 Mo. 518; Conrad v. Fisher, 37 Mo. App. 363; Canifax v. Chapman, 7 Mo. 176; Page v. Freeman, 19 Mo. 422; Allred v. Bray, 41 Mo. 487; McManus v. Lee, 43 Mo. 208; Luebbering v. Oberkoetter, 1 Mo. App. 399; Holliday v. Jackson, 21 Mo. App. 667; Thomas v. Werremeyer, 34 Mo. App. 670; Meade v. Railroad, 68 Mo. App. 100; Willi v. Lucas, 110 Mo. 219;

Vaughn v. Fisher, 32 Mo. App. 35; Perrin v. Claflin, 11 Mo. 13; Taylor v. Ryan, 15 Neb. 573; Peterson v. Foli, 67 Ia. 402; Leeser v. Boekhoff, 33 Mo. App. 234; Clark v. Brott, 71 Mo. 473; Kimm v. Osgood, 19 Mo. 61; Long's Appeal, 23 Pa. St. 297; Gottlieb v. Barton, 57 Pac. (Cal.) 754; Hallowell v. Page, 24 Mo. 590; Anthony v. Bartholomew, 69 Mo. 186; Dellinger v. Higgins, 26 Mo. 180; McDonald v. Leewright, 31 Mo. 29; Reeves v. Reeves, 33 Mo. 28; Stewart v. Stringer, 41 Mo. 400; Jeffries v. Wright, 51 Mo. 215; Bank v. Suman, 79 Mo. 527; Sparkman v. Swift, 81 Ala. 233.    (6)   The joint levy of the attachments by the sheriff was fully ratified by subsequent acts and proceedings in the attachment cases, by procuring an order of sale of the attached property, by declining to surrender the property upon the filing of the interpleas by Smyth, by making a contest for the same, and making common cause in the trial of the cases, by filing the joint stipulation in all of the cases and by consenting to judgment thereon.    Vaughn v. Fisher, 32 Mo. App. 36; Peterson v. Foli, 67 Ia. 402; Wetzel v. Waters, 18 Mo. 396; Luebbering v. Oberkoetter, 1 Mo. App. 399; Kamerick v. Castleman, 29 Mo. App. 664; Dowell v. Taylor, 2 Mo. App. 329; Peckham v. Lindell Glass Co., 9 Mo. App. 459; State to use v. Donnelly, 9 Mo. App. 524; Rott v. Chandler, 10 Wend. 111; Ball v. Loomis, 29 N. Y. 412; Knight v. Nelson, 117 Mass. 458; Cole v. Edwards, 52 Neb. 711; Perrin v. Claflin, 11 Mo. 13; Taylor v. Ryan, 15 Neb. 573; Brewster v. Gauss, 37 Mo. 518; Kuhn v. Weil, 73 Mo. 213; Lesser v. Boeckhoff, 33 Mo. App. 234; Conrad v. Fisher, 37 Mo. App. 352; Palmer v. Shenkel, 50 Mo. App. 571.    (7)   Defendants were notified of the suit in which judgment was rendered against plaintiff, and even if not notified such judgment was proper evidence in the case. Vandiver v. Pollak, 107 Ala. 555; Selz v. Guthmann, 62 Ill. App. 635; Cathcart v. Foulke, 13 Mo. 561; Skrainka v. Rohan, 18 Mo. App. 340.    (8)   Recovery by plaintiff in this case should be against all of the de-

fendants equally. Van Petten v. Richardson, 68 Mo. 379; Vandiver v. Pollak, 107 Ala. 560.

*Martin L. Clardy, Robert A. Anthony, Walter D. Coles, Jones, Jones & Hocker* and *Lyon & Swarts* for respondents.

(1) The evidence shows conclusively that the parties, in levying their attachments against Casebeer, acted severally and independently, and that there was no co-operation or concert of action between them, and consequently they can not be held joint tortfeasors. (2) The trespasses committed in levying the writs of attachment against Casebeer, being several and distinct, the plaintiffs were several, and not joint, tortfeasors, and, therefore, contribution will not lie as between them. Wehle v. Hairland, 42 How. Pr. 410; Rhea v. White, 3 Head (Tenn.) 121; Navigation Co. v. Richards, 57 Pa. St. 142; Miller v. Ditch Co., 87 Cal. 430; Blaidell v. Stephens, 14 Nev. 17; Hardware Co. v. Grocery Co., 64 Mo. App. 681; Leeser v. Boeckhoff, 33 Mo. App. 234; Brewster v. Gauss, 37 Mo. 519; Stanley v. Railroad, 114 Mo. 606; Berkson v. Railroad, 144 Mo. 217; Frankenthal v. Lingo, 16 Tex. Civ. App. 229; Sels v. Greene, 88 Fed. 127; Grund v. Van Vleck, 69 Ill. 479; Jobe v. O'Brien, 21 Tenn. 34; Winnie v. Johnson, 1 Duv. (Ky.) 171. (3) Even if there was some co-operation among the attorneys who represented the several attaching plaintiffs, such co-operation of attorneys can not be held to render the several plaintiffs joint tortfeasors. The authority of an attorney does not extend beyond the prosecution of his client's own suit, and unless authorized by his client so to do, an attorney can not by his conduct render his client liable for acts done by other independent suitors in prosecuting independent suits. (4) Assuming that the court holds that under the evidence, contribution ought to be decreed, as against respondents, then respondents maintain: (a) That the

amount of the judgment rendered against Paddock-Hawley Iron Company, in the suit brought against it by Smyth in Iowa, is not, as against respondents M. Deguire & Company and Clark Shoe Company, competent evidence of the amount of the damages sustained by Smyth by reason of the levy of the several attachments in the Casebeer suits, as said respondents were never notified of the Iowa suit so as to have an opportunity of being heard therein. Cathcart v. Foulke, 13 Mo. 561. (b) That respondents can not be called upon to contribute with respect to : 1. Attorneys' fees expended in the Iowa suits, $1,398.50. 2. Traveling expenses, expenses of attorneys, etc., in such suit, $705. (c) That respondents can not be called upon to contribute with respect to the costs and expenses incurred by plaintiff in prosecuting suit against sheriff John H. Johnson and his sureties. (5) The release of the sureties upon the attachment bond by Smyth was a release of some of the joint tortfeasors and in law operates as a release of all. This defense was not made in the Iowa suit and the defendants, Clark Shoe Company and M. Deguire & Company, not having been legally notified, are not bound by that judgment, which could have been avoided by·a proper defense.

MARSHALL, J.—This is a suit in equity for contribution. In March, 1891, one E. R. Casebeer was engaged in business in Williamsville, Wayne county, Missouri. The plaintiff, and the defendants, Rice, Stix & Co., James Beakey Stove Co., and Clark Shoe Co. (which has since ceased to do business and its former directors are sued as trustees of the company) were engaged in business in St. Louis, and the defendant M. Deguire & Co. was engaged in business in Fredericktown, Missouri. Sometime prior to March 17, 1891, the Peters-Miller Shoe Co. began an attachment suit against Casebeer and had it levied on his stock of goods. Thereupon on March 17, 1891, the Clark Shoe Co., James

Beakey Stove Co., Rice, Stix & Co., and the Martin Clothing Co., separately and each for itself and without the knowledge of the other, instituted attachment suits against Casebeer. They placed their claims in the hands of the Ladd Collection Agency in St. Louis, and Ladd sent them to I. N. Davidson, an attorney at Poplar Bluff, and he employed S. R. Durham, an attorney at Piedmont, to help him.

On March 15, 1891, a traveling representative of the plaintiff went to Williamsville, and presented a bill to Casebeer for what he owed the plaintiff. Casebeer gave him a draft for the bill, and on the next day he sold Casebeer another bill of goods. On March 18th, said representative was notified that the draft had not been paid and was directed to go to Williamsville to attend to it. Upon arriving at Williamsville said representative found the store locked up and learned that the Peters-Miller Shoe Company had attached the goods. He made inquiries about Casebeer's affairs, and found that he had transferred all his goods and property to one Jay J. Smyth, of Iowa, to secure him what he owed him, and that Smyth was in possession when the Peters-Miller Shoe Company's attachment was served. Thereupon said representative employed John R. Raney, an attorney at Williamsville, and on March 19th instituted an attachment suit against Casebeer. Neither the plaintiff nor its representative nor its attorney knew at that time that Rice, Stix & Co., James Beakey Stove Co., Clark Shoe Co. and the Martin Clothing Company, had begun attachment suits against Casebeer, two days previously. But the plaintiff's representative acted for the plaintiff alone and without consultation or concert of action with any other creditor. Thereafter, on March 21st, a member of the firm of M. Deguire & Co. heard that Casebeer was in financial difficulty, and he went to Piedmont, and consulted John R. Raney, with the result that M. Deguire & Co. also began an attachment suit against Casebeer. But no

member of that firm knew when their attachment suit was begun that the plaintiff had begun an attachment suit against Casebeer two days previously, nor that any one else had done so, except one Joe Williams, and did not even know at that time of the conveyance by Casebeer to Smyth. They also employed Mr. Raney, as their attorney, but he says he did not tell Deguire & Co. that he represented the plaintiff herein, nor that they had started an attachment suit against Casebeer two days previously.

The clerk issued writs of attachment in all the cases and placed them all in the sheriff's hands at the same time, on March 23d, and the sheriff levied them on March 24th. Mr. Raney, acting for the plaintiff herein, says he directed the sheriff to levy the plaintiff's attachment first and to levy upon property as to which the expenses would be as small as possible. None of the other creditors gave any directions whatever to the sheriff and were not present when the levy was made. The sheriff levied all the attachments on March 24th. In his return to the plaintiff's writ he said he levied upon "all the personal property listed in the schedule hereto attached and which is made a part of this return," and in his returns upon all the other writs he said he levied upon "all the personal property listed and scheduled and attached to my return in the case of Paddock-Hawley Iron Co. v. E. R. Casebeer, which list is made a part of this return."

On March 28th, 1891, Rice, Stix & Co., Clark Shoe Co., Martin Clothing Co., and James Beakey Stove Co. each for itself obtained orders in their respective cases, for the sale of the personal property.

On May 4, 1891, the plaintiff, Paddock-Hawley Iron Co., and M. Deguire & Co., each for itself, obtained orders, in their respective cases, for the sale of the personal property. Thereafter the sheriff sold the attached property for $2,174.70.

On July 16, 1891, Jay J. Smyth filed interpleas in

each of the six attachment suits. The venue was changed in all the cases from Wayne county to Reynolds county. The Deguire case was tried twice, the first time it resulted in a hung jury, and the second time a verdict was returned for the defendant, but afterwards a new trial was granted. Upon these trials Mr. Raney, who was attorney for Deguire & Co., and also for the Paddock Hawley Iron Co., tried the case on behalf of the defendants. He was assisted by Mr. Yancey, who was attorney for the Peters-Miller Shoe Co., and for Williams & Co., and by Mr. L. F. Dinning, who was employed as special counsel in all the attachment cases. Mr. Durham was present but only as a witness. Mr. Davidson took no part in the trial.

Thereafter the case of the Peters-Miller Shoe Co. v. Casebeer; Smyth, Interpleader, was tried in the circuit court and resulted in favor of the plaintiff. The interpleader appealed to the St. Louis Court of Appeals, and that court reversed the judgment, but held that the evidence was insufficient to support a finding that the conveyance to Smyth was fraudulent. [Peters-Miller Shoe Co. v. Casebeer, 53 Mo. App. 640.]

As the evidence adduced in that case was adjudged insufficient to support a judgment in favor of the attaching creditor, and as the evidence in all the other cases was the same, the attorneys for all the parties entered into a stipulation to be filed in each case, agreeing that judgments might be entered in each case in favor of the Interpleader Smyth, for the $2,939.30 in the hands of the sheriff resulting from the sale of the attached property.

Thereafter Smyth instituted suit against the Paddock-Hawley Iron Co., in Iowa, to recover the value of the goods that had been levied on under the attachment writs. The cause was removed to the United States Circuit Court for the northern district of Iowa, and the trial resulted in a judgment for the plaintiff therein for $4,549, principal and interest, $1,398 attorneys' fees,

and $704 costs.   The court, however, required Smyth to bring suit against the sheriff of Wayne county, for the recovery of the $2,939.30 in his hands as aforesaid. This the plaintiff did, and recovered judgment against the sheriff, but as the court house had been burned and the records destroyed, it was not ascertained who his bondsmen were, so no judgment was obtained against them.   Nothing was realized on the judgment against the sheriff.   The Paddock-Hawley Iron Co. paid $250 attorney's fees and expenses in the prosecution of this suit.   Thereupon the Paddock-Hawley Iron Co. paid the judgment, attorney's fees and costs and expenses in the United States Court for Iowa, amounting to $6,651.89, and then instituted this suit in equity against the other attaching creditors, except the Martin Clothing Co., which had failed.

The circuit court entered judgment for the defendants, and the plaintiff appealed.

## I.

The plaintiff's contention is that all the attaching creditors acted jointly; that although the writs were sued out at different times, they were all levied at the same time, and that the sheriff was their common agent; that the tortious act was committed without guilty intent, but in the prosecution of what they honestly believed to be their legal rights, and hence the right of contribution exists.   Or that if there was no concert of action between the attaching creditors in the first instance, the defendants herein are liable because they ratified and affirmed the acts of their common agent, the sheriff, in levying simultaneously upon all the property, and also ratified the acts of their attorneys in making common cause in the defense of the Deguire suit, and afterwards in signing a single stipulation for judgment in the six attachment cases, and that in addition to all this the trespass was single and the injured party was entitled to but one satisfaction.

On the other hand, the defendants deny that the attaching creditors acted jointly, and say that each acted separately, and that none of them knew the others had instituted proceedings when they commenced their suits; deny that the sheriff was their common agent, but say he is the officer empowered by law to serve writs, and they had no power of appointment of an agent to serve their writs; deny that they gave the sheriff any directions about serving the writs, or that they knew he was going to serve the writs simultaneously, and say the plaintiff was the only one who directed the sheriff, and it directed him to serve its writ first; deny that they knew that their attorneys also represented other creditors, and say it is immaterial if they did, especially as Williamsville is a small town and there are few attorneys there; deny that their attorneys made common cause with plaintiff's attorneys in the trial of the Deguire case, or otherwise; deny that the signing of one stipulation to be filed in all the cases agreeing to a judgment in favor of Smyth constituted making a common cause; and deny that they are liable if there was no concert of action—no joint trespass even though the trespass was single so far as the injured party was concerned.

Upon the facts disclosed by the record there is no substantial basis for the charge that the trespass was joint, nor that it was ratified afterwards. Each creditor acted for himself. None of the parties to this action knew when they sued out their writs, that any of the other parties hereto had sued out writs. They all knew that the Peters-Miller Shoe Co. had sued out a writ and that it had been levied, and Deguire & Co. knew that Williams had begun suit. The defendants, except Deguire, were represented by different counsel from the plaintiff, and their suits were begun two days before the plaintiff's suit was begun, and while the plaintiff had a draft from Casebeer for what he owed them, and while they had an additional order from him for new goods,

and before the draft was dishonored, or at any rate before the plaintiff's traveling representative who sued out their attachment, knew that the draft was dishonored or that Casebeer had failed.   The Deguire suit was instituted by the same counsel who represented the plaintiff, but was begun two days later than the plaintiff's suit, and the counsel says he did not tell Deguire anything about the plaintiff's suit nor that he represented them.   None of the counsel representing the defendants, except Deguire, participated in the trial of the Deguire case, save Mr. Dinning, and he was special counsel in all of the cases, but it does not appear that there was any concert of action between them in employing him.   All the attorneys for the attaching creditors watched the trial of the Deguire case closely, not because it would determine their cases, but because the evidence would be the same in their cases, and they could see its effect on the Deguire case, and also learn the position and authorities of the counsel for the interpleader.   But there was no concert of action.   There was a common sympathy because they were pursuing a common debtor and fighting a common interpleader, but there was no unity of action nor of interest.   The damage to the defendant and to the interpleader was single, but it would have been the same if only one creditor had attached, and there were no concurrent, separate acts that necessarily had to combine to produce the injury. Hence the attaching creditors were not connecting links in the chain of causation.

Therefore, upon the facts of this case, "the several attaching creditors were in no proper sense joint trespassers at all," as was aptly said in the similar case of Brewster v. Gauss, 37 Mo. l. c. 519.

There is also no substantial evidence that the defendants ratified or affirmed any trespass that either had committed. The attorneys of Rice, Stix & Co., Clark Shoe Co., James Beakey Stove Co., and Martin Clothing Co., did not participate in—much less make common

cause in—the trial of the Deguire case.   Mr. Durham, one of their attorneys, was present at the trial, but was there as a witness.   Mr. Dinning was special counsel for all the attaching creditors, but there is no evidence that they made common cause in employing him, and there was no legal impediment in the way of his accepting employment from as many different clients as chose to employ him, so long as his acts in representing them were not necessarily inconsistent.   Mr. Raney represented Deguire and also the plaintiff herein, but as there was nothing inconsistent in his representing both, so such employment did not make him their joint agent. [Frankenthal v. Lingo, 16 Tex. Civ. App. 229.]

The sheriff was the officer designated, except in specified cases not present here, by the law, to serve writs of attachment.   He was not the agent—common, joint or special—of any of the attaching creditors.   He had a legal duty to perform as to each, but he owed no common or special duty to them.

The signing of the stipulation agreeing to a judgment for the interpleader in each of the attachment suits, was in no just or proper sense an act of ratification of any previous step or act in the case, that had been taken jointly or separately.   The case of Peters-Miller Shoe Co. had then been decided.   That decision was a clean, unequivocal victory for the interpleader. There was nothing to be gained by further contesting these attachment suits.   The attaching creditors simply surrendered.   A surrender can not be construed into a ratification of previous separate acts of the defeated parties.   The paper signed by all was simply a confession of inability to further injure, delay or fight the interpleader.   It voiced no defense, no challenge, no plan of campaign, no declaration of purpose or of principle.   It dealt with the then present and future and not with the past.   It did not amount to a ratification of anything.   This disposes of the first contention of

the plaintiff, that the attaching creditors acted in concert.

## II.

The remaining question is whether the defendants are liable even if they did not act in concert, but acted independently of each other.

The plaintiff contends that the defendants are liable, upon the ground that the trespass was single, and the injured party is entitled to but one satisfaction. This contention is supported by the cases of Vandiver v. Pollak, 107 Ala. 547; Sparkman v. Swift, 81 Ala. 233; Stone v. Dickinson, 5 Allen (Mass.) 29, and to some extent by Ellis v. Howard, 17 Vt. 330. But the weight of authority and the rule in this State is that in order that there may be contribution between tortfeasors, they must have acted jointly or by concert of action. The question whether or not the injured party is entitled to only one satisfaction or whether the trespass is single, does not determine the right to contribution. There must be actual unity of action between them to authorize contribution among them. [Jobe v. O'Brien, 2 Humph. 34; Navigation Co. v. Richards, 57 Pa. St. 142; Rhea v. White, 3 Head (Tenn.) 121; Miller v. Highland Ditch Co., 87 Cal. 430; Frankenthal v. Lingo, 16 Tex. Civ. App. 229; Brewster v. Gauss, 37 Mo. 518; Lesser v. Boekhoff, 33 Mo. App. l. c. 234; Spalding v. Bank, 78 Mo. App. l. c. 382; Hardware Co. v. Grocer Co., 64 Mo. App. l. c. 681; St. Louis v. Conn. Mut. Life Ins. Co., 107 Mo. 92.]

In Lesser v. Boekhoff, 33 Mo. App. l. c. 234, it was said, "The evidence required to prove a joint trespass is analogous to that required to prove a conspiracy."

In Frankenthal v. Lingo, 16 Tex. Civ. App. 229, it was held that where three creditors bring separate suits against the same defendant for separate debts, and sue out separate writs of attachment, which are levied at the same time, but in successive order, the mere fact that the plaintiff creditors all had the same agent and

attorney in bringing the suits and levying the writs is not sufficient to authorize contribution among them.

In Miller v. Highland Ditch Co., 87 Cal. 430, it was held that, "several tortfeasors, not acting in concert or by unity of design, are not liable to a joint action for damages, although the consequences of the several torts have united to produce an injury to the plaintiff."

Section 2870, Revised Statutes 1899, provides: "Defendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution, and all other consequences of such judgment, in the same manner and to the same extent as defendants in a judgment in an action founded on contract."

This provision has been upon the statute laws of this State ever since 1855 (R. S. 1855, p. 649, sec. 8), but it has never been construed to warrant contribution among tortfeasors unless there was concert of action among them. It was referred to in Brewster v. Gauss, 37 Mo. l. c. 519, and was said to be "general in its nature," but was held not to apply to that case because the attaching creditors "were in no proper sense joint trespassers."

There is a well-defined difference between the liability of two or more tortfeasors to third persons, and the right of tortfeasors to contribution among themselves. As to third persons "tortfeasors are jointly and separately liable whether they acted in concert or independently." [Hubbard v. Railroad, 173 Mo. 249; Newcomb v. Railroad, 169 Mo. 409.] And this is so, because where the acts of two or more persons combine to produce injury to third, innocent parties, the law will not attempt to ascertain how much injury the act of each produced and to hold each responsible only for his own wrong, but will hold all whose acts contributed in whatever degree to the injury for the whole injury, whether they acted independently or in concert. But, among tortfeasors themselves, the right to contribution depends upon totally different considerations. The general rule

has long been that contribution is not allowed among tortfeasors. To this exceptions have grown up, the the principal of which is, that when there was no guilty intent in the tortious act, and there was concert of action, contribution is allowed.

A failure to differentiate between the liability of tortfeasors to third persons, and for contribution among themselves, has occasioned much of the confusion that appears in some of the adjudicated cases.

The weight of authority, supported by the better reason, and the rule in this State, is that the right to contribution does not exist unless there has been concert of action between the tortfeasors.

In this suit no such condition is present and therefore the judgment of the circuit court, denying contribution, is right, and its judgment is affirmed.

All concur.